# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

No. 09-871V
June 11, 2014
Not to be Published

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| MELISSA SILVA, | * | |
| | * | |
| Petitioner, | * | Hepatitis B vaccine; alleged Guillain- |
| | * | Barré Syndrome ("GBS"); no expert |
| v. | * | willing to testify; petitioner moves to |
| | * | dismiss |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>Melissa Silva</u>, Rincon, PR, for petitioner (pro se).
<u>Lisa A. Watts</u>, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION[1]

On December 16, 2009, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2006), alleging that hepatitis B vaccine administered on October 17, 2007 caused her to suffer Guillain-Barré Syndrome ("GBS").

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioners have 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the categories listed above, the special master shall redact such material from public access.

On December 16, 2009, the case was assigned to former Special Master Dee Lord.

On October 18, 2010, respondent filed her Rule 4(c) Report.  Resp't's Rep.  Respondent notes that after petitioner's hepatitis B vaccination on October 17, 2007, petitioner did not see a medical doctor until almost three months later on January 14, 2008, when she saw Dr. Edgar Baucage.  Id. at 2 (citing Med recs. Ex. 7, at 7; Ex. 3, at 12).  Dr. Baucage performed an electromyography ("EMG") and a nerve conduction study on petitioner, which he claimed showed evidence of peripheral neuropathy.  Id.  Petitioner did not visit her primary care physician until January 8, 2009, almost 15 months after her vaccination.  Id.

On July 28, 2011, petitioner filed the medical expert report of Dr. David S. Younger, in which he states that petitioner developed GBS six or seven weeks after her third hepatitis B vaccination.  Ex. 16, at 3.  Dr. Younger based his opinion on the results of the EMG and nerve conduction study that Dr. Baucage performed in January 2008.  Id.

On November 23, 2011, respondent filed the medical expert report of Dr. Winfried Raabe, who states that petitioner never saw a doctor or visited an emergency room in December 2007, when petitioner claims she had the onset of pain, bilateral weakness in her legs, and burning sensation and paresthesias in her legs and hips.  Ex. A, at 4.  Dr. Raabe discounted the EMG and nerve conduction study results of Dr. Baucage because his EMG did not conform to professional standards.  Id.  For example, the original typed document was altered two times, and in the report, a distal motor latency for the common peroneal nerve was actually within the normal range.  Id. at 4, 5.  Dr. Raabe also lists nine other variances from standard practice in the nerve conduction studies.  Id.  In addition to the unreliability of Dr. Baucage's report, Dr. Raabe states that the medical records do not document that petitioner had any neuromuscular symptoms in 2007 or 2008.  Id. at 6.  No medical provider during that time period diagnosed petitioner with GBS.  Id.  After listing the criteria for diagnosing GBS, Dr. Raabe states petitioner's medical records do not document clinical findings of GBS in December 2007, in 2008, or any time afterward.  Id. at 7.

On January 23, 2012, Special Master Lord issued a Pre-Hearing Order, setting a hearing for June 21–22, 2012.

On April 13, 2012, petitioner's counsel filed a Joint Status Report stating that petitioner's expert, Dr. David S. Younger, was unable to serve as an expert witness in the case.  Petitioner's counsel moved for an extension of time of 60 days or June 14, 2012 to find another expert and file a supplemental expert report.  On April 23, 2012, Special Master Lord issued an order postponing the hearing.

On June 22, 2012, petitioner moved for an extension of time until August 21, 2012 to file a supplemental expert report, which Special Master Lord granted.  On August 21, 2012, petitioner moved for a second extension of time until October 22, 2012, which Special Master Lord granted.

2

On September 10, 2012, the case was transferred to the undersigned.

On October 22, 2012, petitioner filed a motion to stay the proceedings for 90 days or until January 21, 2013, to file appropriate pleadings in the case, stating petitioner's counsel would not be filing an expert report in the case.  On October 23, 2012, the undersigned granted petitioner's motion and rescheduled the telephonic status conference set for October 29, 2012.

On January 29, 2013, the undersigned held a telephonic status conference with counsel.  Petitioner's counsel said she had not gotten a definitive answer about how to proceed from petitioner, although counsel sent two certified letters and made multiple phone calls listing petitioner's options.  One of those options was petitioner's counsel withdrawing as counsel.

On February 1, 2013, petitioner's counsel filed a motion for leave to withdraw, stating she was "no longer able to represent Petitioner in this claim due to irreconcilable differences."  Mot. at 1.  On January 31, 2013, petitioner had informed her counsel that she intended to proceed pro se.  Id. at 2.  On February 1, 2013, the undersigned granted petitioner's motion and ordered that the case be removed from electronic filing.  The undersigned ordered petitioner to contact the undersigned's law clerk by February 22, 2013 to schedule a telephonic status conference.

On February 28, 2013, the undersigned ordered petitioner to contact the undersigned's law clerk by March 13, 2013, since all attempts to contact petitioner had failed.  Petitioner contacted the undersigned's law clerk, and a telephonic status conference was held on March 8, 2013.  Petitioner said she had contacted an attorney in Puerto Rico and one on the internet.  The undersigned sent petitioner a list of attorneys admitted to practice in the Vaccine Program.  The undersigned gave petitioner until April 9, 2013 to find another attorney.  The undersigned stated petitioner would have to find a neurologist to respond to respondent's expert Dr. Raabe's report.

On April 24, 2013, the undersigned held a telephonic status conference with the parties.  Petitioner said she had spoken with a vaccine attorney in California, who was waiting for petitioner's prior attorney to send her petitioner's medical records before deciding whether to represent her.

On June 12, 2013, the undersigned held a telephonic status conference with the parties.  Petitioner said she had not yet received a response from the California vaccine attorney she had contacted.  Petitioner said she was going to see a neurologist.

On August 14, 2013, the undersigned held a telephonic status conference with the parties.  Petitioner said that the California attorney had not decided whether she would represent petitioner.

On October 22, 2013, the undersigned held a telephonic status conference with the parties.  Petitioner said that the California attorney informed her that she would not represent

petitioner because she was not comfortable taking the case after reading petitioner's medical records. Petitioner said she was seeking another attorney to represent her. A neurologist whom petitioner had seen would not offer an opinion for her while she was unrepresented by counsel. Another neurologist also would not give her an opinion. Petitioner listed the names of two Illinois vaccine attorneys she had contacted.

On February 6, 2013, the undersigned held a telephonic status conference with the parties. Petitioner said she had contacted an Alabama attorney to represent her. He was attempting to obtain petitioner's medical records before making up his mind.

On March 26, 2013, the undersigned held a telephonic status conference with the parties. Petitioner said that the Alabama attorney would not represent her. He made his decision within two days. Petitioner said she wanted to find another attorney or continue pro se.

On June 9, 2014, the undersigned held a telephonic status conference with the parties. The undersigned explained that petitioner had sought legal representation from five different attorneys without success after her initial attorney withdrew and had never filed a neurologist's response to Dr. Raabe's criticism of Dr. Younger's expert report. Petitioner made an oral motion to dismiss.

The undersigned **GRANTS** petitioner's motion to dismiss and **DISMISSES** this case.

## DISCUSSION

To satisfy her burden of proving causation in fact, petitioner must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005). In Althen, the Federal Circuit quoted its opinion in Grant v. Secretary of Health and Human Services, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury[,]" the logical sequence being supported by "reputable medical or scientific explanation[,]" i.e., "evidence in the form of scientific studies or expert medical testimony[.]"

Althen, 418 F.3d at 1278.

Without more, "evidence showing an absence of other causes does not meet petitioners' affirmative duty to show actual or legal causation." Grant, 956 F.2d at 1149. Mere temporal association is not sufficient to prove causation in fact. Id. at 1148.

4

Although petitioner alleges hepatitis B vaccine caused her GBS, the medical records do not prove her allegation, and petitioner's expert medical report from Dr. Younger is based on an EMG and nerve conduction study that, according to respondent's expert, Dr. Raabe, does not conform with medical standards.  When respondent filed Dr. Raabe's report, Dr. Younger withdrew from the case, and petitioner's counsel could not find anyone to replace him.  Petitioner's counsel then withdrew.  No neurologist that petitioner has seen will give her a report substantiating her allegations unless she first has an attorney and none of the five attorneys she has consulted has agreed to represent her after reading her medical records.  The Vaccine Act does not permit the undersigned to rule for petitioner based on her claims alone, "unsubstantiated by medical records or by medical opinion."  42 U.S.C. § 300aa-13(a)(1) (2006).

Petitioner has not satisfied the first prong of Althen in that she has not presented through medical records or an expert medical opinion a theory explaining how hepatitis B vaccine could cause her alleged GBS.  Petitioner has not satisfied the second prong of Althen that there is a logical sequence of cause and effect showing that hepatitis B vaccine did cause petitioner to have GBS.  In fact, she has not proven she had GBS.  Petitioner has not satisfied the third prong of Althen that the onset interval (whatever it was) is a medically appropriate time interval to show causation of GBS from hepatitis B vaccine.  Thus, petitioner has not made a prima facie case of causation.

The undersigned **GRANTS** petitioner's motion to dismiss.  This case is **DISMISSED**.

## CONCLUSION

This petition is **DISMISSED**.  In the absence of a motion for review filed pursuant to RCFC, Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

_____                                              _____
DATE                                                                                    Laura D. Millman
                                                                                              Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.